556 A.2d 510

Commonwealth of Pennsylvania, Department of Transportation, Appellant *v.* William J. Richards, Jr., Appellee.

Argued December 16, 1988, before Judges DOYLE and COLINS, and Senior Judge BARBIERI, sitting as a panel of three.

*William J. Cressler,* Assistant Counsel, with him, *Scott M. Olin,* Assistant Counsel, and *John L. Heaton,* Chief Counsel, for appellant.

*Peter J. Weygandt,* for appellee.

OPINION BY JUDGE DOYLE, March 29, 1989:

The Commonwealth of Pennsylvania, Department of Transportation (DOT) appeals an order of the Court of Common Pleas of Chester County dismissing its preliminary objections to the petition of William J. Richards, Jr. for the appointment of a Board of Viewers to assess damages in the alleged *de facto* taking of property owned by Richards.

The pertinent facts are as follows. Richards owns property abutting the north side of Legislative Route 131 in New Garden Township, Chester County. Route 131 runs east and west. In 1985, DOT repaved and changed the grade of Route 131. Before DOT widened the roadway it spanned twenty feet across. DOT extended the roadway on each side by one foot and added a four foot shoulder on each side as well. A "trough" now forms at the point where the downward slope of the new shoulder meets the foot of Richards' inclining driveway. As a result of the roadwork, it became very difficult, if not impossible, for a westbound car on Route 131 to make a right turn directly into Richards' driveway because, due to the uneven grade of road, the bottom of the car turning into the driveway would scrape against the roadway. Instead of entering his property from the westbound lane, Richards, and everyone else wishing to enter Richards' property, must turn left into oncoming traffic, then make a wide right turn into the driveway (a very dangerous maneuver). Another approach one may take is to make a left-hand turn across the eastbound lane, turn around on property on the south side of Route 131 directly across

from Richards' driveway, then re-cross Route 131, and finally enter his property (a maneuver resulting in a technical trespass on the property of others). Traveling in an easterly direction, Richards has complete access to his property as well as full access to Route 131 when leaving his property. He alleges only a loss of ingress to his driveway from Route 131 from the east.

Richards filed a Petition for the appointment of a Board of Viewers in the Court of Common Pleas of Chester County alleging that DOT deprived him of access to his property when he wished to enter his driveway from the east. DOT timely filed preliminary objections and the common pleas court dismissed the objections. DOT then appealed the dismissal to this Court, and we held that the lower court erred in dismissing DOT's preliminary objections without an evidentiary hearing.[1] Upon remand, the trial court held a hearing and again dismissed the preliminary objections. DOT now appeals to this Court a second time.

The primary issue before us is whether Section 612 of the Eminent Domain Code[2] (Code) requires a *substantial* interference with access to property in order to allow a landowner to recover damages against the Commonwealth in an eminent domain proceeding. Before, we reach this issue, however, we must first address DOT's motion to suppress a portion of Richards' brief. DOT wishes to suppress that portion of Richards' brief dealing with an extract from the Legislative Journal[3] relating to an amendment to Senate Bill 2 (the Eminent Domain Code) on the basis that the extract is not part of the record

---

[1] The unreported opinion was filed July 17, 1987 and is docketed at No. 1212 C.D. 1986.

[2] Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §1-612.

[3] Legislative Journal—House, May 13, 1964, pp. 124-125.

and that it should not be relied upon. We have determined that state legislative *debates* represent the opinion only of the particular member of the legislature who is speaking and thus are unpersuasive in construing acts of the legislature. *Montour School District v. Pennsylvania Human Relations Commission*, 109 Pa. Commonwealth Ct. 1, 6-7, n.1, 530 A.2d 957, 960, n.1 (1987). That is certainly true in this instance. In addition, the debate referenced did not deal directly with Section 612, nor did it deal with the interpretation of the specific language which concerns us here. Thus, we sustain DOT's motion to suppress that part of Richards' brief discussing extracts from the Legislative Journal.

We now turn to the primary issue of whether "substantial" should be read into Section 612 of the Code,[4] which reads as follows:

> All condemnors, including the Commonwealth of Pennsylvania, shall be liable for damages to property abutting the area of an improvement resulting from change of grade of a road or highway, *permanent interference with access thereto*, or injury to surface support, whether or not any property is taken. (Emphasis added.)

DOT argues that the trial court committed an error of law in holding that under Section 612 of the Code there is no requirement that the damage be "substantial" in order for the condemnee to recover.[5] The opinion of common pleas court states the following:

---

[4] Our scope of review in a condemnation case is to determine whether the trial court abused its discretion, whether an error of law was committed, or whether the findings of fact and conclusions of law are supported by sufficient evidence. *Department of Transportation v. Guyette*, 103 Pa. Commonwealth Ct. 402, 520 A.2d 548, *petition for allowance of appeal denied*, 516 Pa. 644, 533 A.2d 714 (1987).

[5] DOT also argues that the trial court committed an error of law when it said it would not treat residential properties differently from

> While I find substantial evidence in the record to support Petitioner's claim of interference with his access, I cannot honestly find this burden to be substantial. *The lack of a finding of substantial interference, however, does not bar recovery for Petitioner.* The provisions of a statute conferring the power of eminent domain are to be strictly construed: 1 Pa. C.S.A. §1928(b)(4). *According to the plain language of 26 P.S. §1-612, condemnors are liable for damages to property abutting an improvement; there is no requirement that the damage be substantial.* (Emphasis added.)

Richards, on the other hand, argues that the trial court was correct that the statutory language is clear and that a "substantial" impairment of access, while it may have been the pre-Code standard, is no longer the applicable standard. Certainly Section 612 does not use the term "substantial," and the issue is then whether the law otherwise should require such a standard.

Prior to the enactment of the Eminent Domain Code in 1964, liability could be imposed upon the Commonwealth for consequential damages only where damages followed from an *actual* taking by the Commonwealth, *Wolf*, or where a statute specifically permitted it. *Moyer v. Commonwealth*, 183 Pa. Superior Ct. 333, 132 A.2d 902 (1957). If damages were not a part of an actual taking, the Commonwealth could not be held liable for conse-

business properties in deciding whether there should be allowed a Section 612 claim for damages. We disagree with DOT's contention and agree with the trial judge. The Supreme Court, in *Wolf v. Department of Highways*, 422 Pa. 34, 220 A.2d 868 (1966), refused to distinguish between business properties and residential properties when it determined that businesses do not have a compensable interest in traffic patterns. We note that the case at hand is not a medial barrier case as was *Wolf*, but nonetheless believe *Wolf's* reasoning to be applicable here.

quential damages under the Pennsylvania Constitution. *See Mitchell Condemnation Case*, 209 Pa. Superior Ct. 288, 228 A.2d 53 (1967). On the other hand, municipalities, corporations and entities cloaked with the power of condemnation were held liable for consequential damages under Article X, Section 4, of the Pennsylvania Constitution, regardless of an actual taking. Now, however, since the enactment of the Eminent Domain Code, *all* condemnors, including the Commonwealth, must pay damages to owners abutting an area of improvement where there has been permanent interference with access to property, injury to surface support or a change of grade of a road or highway, regardless of whether property has been taken. 26 P.S. §1-612.[6]

In *Mitchell Condemnation Case*, a case which was decided after the Eminent Domain Code was adopted, but where the taking occurred prior to its adoption and is thus a *pre-Code* case, the Superior Court discussed the issue of whether the Commonwealth could be held liable for damages when road construction by the Commonwealth caused condemnees to travel a circuitous route to nearby highways. The Court held that it could not, and reasoned that since the inconvenience of driving a circuitous route to the highways was not "part and parcel" of

---

[6] Section 613 of the Code, 26 P.S. §1-613, also provides for recovery of damages where there has been no formal taking of property. Under Section 613, an affected owner may recover damages for injuries sustained whenever a public road, street or highway is vacated. Just as Section 612 brought the Commonwealth into the set of those who may be liable for consequential damages regardless of "whether or not any property is taken," Section 613 also places the Commonwealth on the same footing with those other condemnors who were able to be sued, where there was a vacation of a road, street or highway, without an actual taking prior to the Code. *See Hession Condemnation Case*, 430 Pa. 273, 242 A.2d 432 (1968), *cert. denied*, 393 U.S. 1049 (1969). Thus, the Commonwealth now may be held liable under both Section 612 and Section 613 of the Code.

property actually taken from the condemnees by the Commonwealth, liability did not exist under Article I, Section 10 of the Pennsylvania Constitution, which provides that private property shall not "be taken or applied to public use, without authority of law and without just compensation. . . ." But, the *Mitchell* court further reasoned that *even* if the Code had applied, the damages claimed would not be compensable. The cogent reasoning of Judge JACOBS in *Mitchell*, although dictum, discussed Section 612 of the new Code as follows:

> Section 612 of the Code makes all condemnors, including the Commonwealth, liable for damages resulting from permanent interference with access to a road or highway. This is simply placing the Commonwealth in the instances listed in Section 612 in the same position as municipal condemnors have been since 1874, and it has been held consistently that in order for liability to exist in the case of municipal condemnors there must be *substantial* impairment of the access. Hedrick v. Harrisburg, 278 Pa. 274, 122 A. 281 (1923); Fecher v. Allegheny County, 313 Pa. 191, 169 A. 87 (1933); Hindes v. Allegheny County, 123 Pa. Superior Ct. 469, 187 A. 219 (1936); Apple v. City of Philadelphia, 103 Pa. Superior Ct. 458, 157 A. 325 (1931). . . . As was said by the Supreme Court of California in Breidert v. Southern Pacific Company, 39 Cal. Rptr. 903, 906, 394 P.2d 719, 722 (1964): 'Not every interference with the property owner's access to the street upon which his property abuts and not every impairment of access, as such, to the general system of public streets constitutes a taking which entitles him to compensation. Such compensation must rest upon the prop-

> property owner's showing of a *substantial impairment* of his right to access to the general system of public streets.' The Mitchells' access to public roads is unaffected by the taking. The fact that they want to use a particular road to reach Route 519 is not such a substantial impairment of access as to be compensable.

*Mitchell*, 209 Pa. Superior Ct. at 294-95, 228 A.2d at 56-57 (emphasis in original).

What the *Mitchell* court dealt with indirectly by dictum, *i.e.*, substantial impairment of access[7] under the Code, we must now decide as the essential issue in the case *sub judice*.

Although we have before us only Section 612, we should not decide this issue without considering Section 613 of the Code as well. The Supreme Court of Pennsylvania in *Hession Condemnation Case*, 430 Pa. 273, 242 A.2d 432 (1968), *cert. denied*, 393 U.S. 1049 (1969), affirmed the use of the standard, "substantial impairment of access" in a Section 613 case, where the Commonwealth was the condemnor, by relying on a pre-Code case, *Melon Street Appeal*, 182 Pa. 397, 38 A. 482 (1897), which stated that a loss of access "must be direct and proximate, and so obvious and substantial, as to admit of calculation." Thus, *Hession* requires a showing of substantial impairment of access to one's property where

---

[7] The right of access is defined as the right of reasonable ingress and egress. *See, e.g., Breinig v. Allegheny County*, 332 Pa. 474, 2 A.2d 842 (1938). We have held in a post-Code case that the right of access "does not entitle the abutting owner to access at *all* points along the highway; it does entitle him to access, by reasonable and conventional means, to his property from the highway and from his property to the highway." *Guyette*, 103 Pa. Commonwealth Ct. 402 at 405, 520 A.2d 548 at 549 (quoting *Wolf*, 422 Pa. at 39, 220 A.2d at 871) (emphasis in original).

there is a vacation of a road or a highway regardless of the identity or authority of the condemnor. *Hession* is required and used as the standard despite the fact that the term "substantial" is not used in Section 613. Section 612, we have seen, also requires a showing of substantial impairment in cases against municipal condemnors and corporations invested with condemnation powers. *See Mitchell.* We are faced now with deciding the last one of the four possibilities remaining under Sections 612 and 613, that is, whether in cases against the Commonwealth there must be a showing of substantial impairment of access where Section 612 is applicable.

If we are to be consistent in our condemnation law dealing with consequential damages, we must require that "substantial" be read into Section 612 cases against the Commonwealth and require that substantial interference be shown, even though the term "substantial" is not actually part of Section 612's phrase "permanent interference with access thereto." The following chart illustrates the lack of uniformity in the law should we not adhere to this logic.

| | Consequential damages for: | Condemnor | Substantial interference required? |
|---|---|---|---|
| §612 | -change of grade of road or highway, -permanent interference with access -injury to surface support | Commonwealth | No |
| | | Municipalities and other corporations | Yes |
| §613 | -Vacation of public road, street or highway | Commonwealth | Yes |
| | | Municipalities and other corporations | Yes |

We hold, therefore, on the basis of logic and the need for uniformity, that Section 612 of the Code requires substantial impairment of access.

Although we believe that the trial court erred in holding that Richards need not demonstrate substantial interference, we may nonetheless affirm the court's order based upon a different rationale, if the basis for our affirmance is clear on the record. *County of Schuylkill v. Maurer*, 113 Pa. Commonwealth Ct. 54, 536 A.2d 479 (1988); *Rhoads v. Lancaster Parking Authority*, 103 Pa. Commonwealth Ct. 303, 520 A.2d 122, *petition for allowance of appeal denied*, 515 Pa. 611, 529 A.2d 1084 (1987); *see also Bayush v. Workmen's Compensation Appeal Board (Connemaugh Township)*, 111 Pa. Commonwealth Ct. 617, 534 A.2d 853 (1987) (Commonwealth Court may affirm decision of Board when result is correct, even though reasons advanced in support of the decision are erroneous when the correct basis for the decision is clear on the record). It is undisputed in the record that any car entering Richards' property from the east on Route 131 could not make a right turn onto the property without scraping the bottom of the car due to the "trough" formed from the change in the grade of the road at the entrance to his driveway. Anyone wishing to enter Richards' property without scraping the bottom of the vehicle would either have to swing into oncoming traffic in order to make a right turn or make a left turn and cross the eastbound lane of traffic on Route 131 onto a neighbor's property across from that of Richards', turn completely around and then re-cross both lanes of traffic. We hold that such evidence constitutes a substantial impairment of access to property as a matter of law.[8]

---

[8] A Commonwealth witness, Mr. Ross, testified that he had once made a right hand turn from the westbound lane into Richards' driveway without difficulty but upon cross-examination indicated he

Accordingly, we affirm the trial court's order.

ORDER

NOW, March 29, 1989, DOT's motion to suppress a part of Richards' brief is sustained, and the order of the Court of Common Pleas of Chester County in the above-captioned matter is affirmed.

could not recall whether the bottom of his vehicle scraped the pavement. Such evidence is legally insufficient to rebut Richards' evidence.